UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James Brady, as trustee of the Minnesota
Laborers Health and Welfare Fund, the
Minnesota Laborers Pension Fund, and the
Minnesota Laborers Vacation Fund and
his successor; William Grimm, as trustee
of the Minnesota Laborers Health and
Welfare Fund and Minnesota Laborers
Pension Fund and his successor; Keith
Kramer, as trustee of the Minnesota
Laborers Vacation Fund and his successor;
Fred Chase, as trustee of the Construction
Laborers' Education, Training and
Apprenticeship Fund of Minnesota and
North Dakota and his successor; Jeff
Seipel, as trustee of the Construction
Laborers' Education, Training and
Apprenticeship Fund of Minnesota and
North Dakota and his successor; Scott
Weicht, as trustee of the Minnesota
Laborers Employers Cooperation and
Education Trust and his successor; and
Tim McCauley, as trustee of the
Minnesota Laborers Employers
Cooperation and Education Trust and his
successor,

               Plaintiffs,

   v.

Borchart Industrial, Inc.; Borchart Steel,
Inc.; and James Borchart, individually,

               Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 05-1386 ADM/AJB

---

Sean O. Skrypek, Esq., McGrann Shea Anderson Carnival Straughn & Lamb, Chartered, Minneapolis, MN, argued for and on behalf of Plaintiffs.

John C. Hauge, Esq., Briggs and Morgan, P.A., Minneapolis, MN, argued for and on behalf of Defendants.

---

## I. INTRODUCTION

On September 19, 2006, oral argument before the undersigned United States District Judge was heard on Defendants Borchart Industrial, Inc. ("Borchart Industrial"), Borchart Steel, Inc. ("Borchart Steel") (collectively, the "Borchart Entities"), and James Borchart's (the Borchart Entities and James Borchart collectively are "Defendants") Motion for Summary Judgment [Docket No. 15]. Plaintiffs are trustees of the Minnesota Laborers Health and Welfare Fund, Minnesota Laborers Pension Fund, Minnesota Laborers Vacation Fund, the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, and the Minnesota Laborers Employers Cooperation Education Trust (collectively, "Plaintiffs" or the "Funds"). In their Complaint [Docket No. 1], Plaintiffs allege that Defendants wrongfully refused to allow Plaintiffs to audit certain payroll and tax records, and that Defendants have withheld certain fringe benefit payments due and owing to Plaintiffs. For the reasons set forth below, Defendants' Motion is denied.

## II. BACKGROUND

Borchart Industrial is a Minnesota corporation incorporated in 1982. First Borchart Aff. [Docket No. 17] ¶ 2. Since 1994, James Borchart has been the sole shareholder of Borchart Industrial. Id. James Borchart has also served as Borchart Industrial's President during the time period relevant to the current dispute. Id. ¶ 1. Borchart Industrial does salvage projects utilizing union labor. Second Borchart Aff. [Docket No. 30] ¶ 11. These projects typically involve removing industrial equipment and steel from buildings and selling the salvaged items as is. Id. ¶ 10. Borchart Industrial's assets include a boom truck, three flatbed semi-trailers, and approximately $100,000 in salvaged scrap inventory. First Borchart Aff. ¶ 4. When engaged in

salvage work, Borchart Industrial leases operating equipment from Borchart Steel.  Id. ¶ 5.

Borchart Steel is a Minnesota corporation incorporated in 1994.  Id. ¶ 3.  Like Borchart Industrial, Borchart Steel engages in salvage projects.  Second Borchart Aff. ¶ 10.  Borchart Steel, however, does not use union labor.  Id. ¶ 11.  Since Borchart Steel's incorporation, James Borchart has been the sole shareholder.  First Borchart Aff. ¶ 3.  James Borchart also serves as Borchart Steel's President.  Id. ¶ 1.

Borchart Industrial and Borchart Steel are closely related companies.  Both are covered by a single insurance policy, although they are listed as separate entities.  Id. Exs. F-G.  Since 1997, Borchart Industrial and Borchart Steel have used a single checking account in Borchart Steel's name.  Id. ¶ 8.  Borchart Industrial's payroll, and its fringe benefit contributions, are paid from Borchart Steel's checking account.  Id.  The Borchart Entities are also parties to a loan financing agreement whereby Borchart Steel loans Borchart Industrial the funds it needs to operate.  Lessard Aff. [Docket No. 23] Exs. B-C.  However, the Borchart Entities operate from different locations, file separate tax returns, and keep an accounting of the funds that Borchart Steel and Borchart Industrial owe each other.  First Borchart Aff. Exs. A-B, E; Second Borchart Aff. Ex. A.

On April 12, 2002, James Borchart, on behalf of Borchart Industrial, signed an Acceptance of Agreement with the Laborers' District Council of Minnesota & North Dakota, making Borchart Industrial a party to the Minnesota State Highway and Heavy Construction Agreement (the "Collective Bargaining Agreement" or "CBA").  Skoog Aff. [Docket No. 24] Ex. A; CBA (Skoog Aff. Ex. B).  The Collective Bargaining Agreement requires employers to make monthly fringe benefit contributions to the Funds for each hour worked by a covered

employee. CBA Art. 22. Additionally, employers must report the hours worked by employees covered by the CBA. CBA Art. 22.2(a); First Borchart Aff. ¶ 10. The CBA also provides that employers must allow the Funds to audit employment and payroll records necessary for the administration of the Funds. CBA Art. 22.6(f). The CBA expired on April 30, 2005. CBA at 1. Borchart Industrial repudiated its collective bargaining relationship with the union as of September 30, 2005. First Borchart Aff. ¶ 9, Ex. H.

Pursuant to the CBA, the Funds' auditor, Lora Lessard, arranged to view Borchart Industrial's employment and payroll records on May 23, 2005. Lessard Aff. ¶ 3. Although she viewed some Borchart Industrial records, Ms. Lessard states that she was denied access to certain payroll and reporting records, including Borchart Industrial's employee time cards, Internal Revenue 941 quarterly reports, W-2 and W-3 forms, Minnesota Unemployment Compensation ("MUC") reports, and records identifying the type of work performed by Borchart Industrial employees. Id. ¶ 4. James Borchart and the Borchart Entities' accountant dispute that Ms. Lessard requested access to time cards or W-2 forms, and allege she never requested to see records regarding the type of work Borchart Industrial employees performed. First Borchart Aff. ¶ 11; Roebke Aff. [Docket No. 29] ¶¶ 3-4.

The parties agree that Borchart Steel's Internal Revenue 941 quarterly reports and MUC reports were disclosed to Ms. Lessard. Second Borchart Aff. ¶¶ 6-8; Lessard Aff. ¶¶ 6-7. These particular Borchart Steel reports were disclosed because they contained information relevant to Borchart Industrial employees. Second Borchart Aff. ¶ 6. Specifically, the disclosed Borchart Steel reports contained combined wage and tax totals for Borchart Steel and Borchart Industrial. Id. ¶¶ 7-8.

After reviewing the materials provided, Ms. Lessard requested additional Borchart Steel business records so that she could verify the accuracy of the fringe benefit contribution reports Borchart Industrial submitted to the Funds pursuant to the CBA. Lessard Aff. ¶ 9. After James Borchart refused her request, Ms. Lessard ended the audit. First Borchart Aff. ¶ 12; Lessard Aff. ¶ 9.

On July 12, 2005, Plaintiffs filed their Complaint, seeking an order requiring Defendants to produce the requested records for the period January 2003 through at least the date of the Complaint. Complaint at 7-8. Plaintiffs assert that if unpaid fringe benefit contributions are due and owing to Plaintiffs, then Borchart Industrial and Borchart Steel are jointly and severally liable as alter egos. Id. ¶ 23. Plaintiffs also allege that James Borchart is liable as an officer of Borchart Industrial, and that the corporate veil of Borchart Steel should be pierced to hold James Borchart individually liable as an owner and officer of Borchart Steel. Id. In addition to amounts owed to them, Plaintiffs seek additional damages and remedies, such as liquidated damages, interest on unpaid contributions, and attorneys' fees. Id. ¶¶ 24-26.

### III. DISCUSSION

**A.  Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for

summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Right to Audit Based On the Need to Verify Borchart Industrial's Data**

Defendants argue that the Funds' auditor was given access to all of the Borchart Industrial records she requested. Defendants further argue that because Borchart Steel is not a party to the CBA, Borchart Steel can not be required to disclose additional records unless Plaintiffs show that Borchart Steel and Borchart Industrial are alter egos. Defendants suggest that the facts can not support a finding of alter ego status, and therefore summary judgment is proper. The Court does not find these arguments persuasive.

"In general, only a party to a collective bargaining agreement is bound by its terms; however . . . an employer which has not signed a labor contract may be so closely tied to a signatory employer as to bind them both to the agreement." Crest Tankers, Inc. v. Nat'l Mar. Union of Am., 796 F.2d 234, 237 (8th Cir. 1986). Here, the Collective Bargaining Agreement explicitly gave the Funds the right to audit Borchart Industrial to the extent necessary for the administration of the Funds. Borchart Steel, a non-party to the CBA, generally would not be required to disclose any records absent a finding that Borchart Industrial and Borchart Steel are alter egos of each other. See Greater Kansas City Laborers Pension Fund v. Superior Gen. Contractors, 104 F.3d 1050, 1054-56 (8th Cir. 1997).

Here, however, Defendants disclosed certain Borchart Steel records, such as Internal

Revenue 941 quarterly reports and MUC reports, in response to the Funds' audit request. Regardless of whether the two corporations are alter egos, this conduct suggests Defendants recognize that some Borchart Steel records were necessary for the Funds' audit of Borchart Industrial. Defendants conceded as much in their briefing, by suggesting they disclosed all Borchart Steel records necessary for the audit. See Reply Mem. in Supp. of Mot. for Summ. J. [Docket No. 28] at 6-8.

The Funds' auditor alleges, however, that she can not verify the accuracy of Borchart Industrial's monthly reports to the Funds because Borchart Steel's Internal Revenue 941 quarterly reports and MUC reports contain combined totals for Borchart Industrial and Borchart Steel. Lessard Aff. ¶¶ 6-9. Therefore, the Funds seek additional payroll data for Borchart Steel, so they can back out Borchart Industrial's totals and verify the fringe benefit contribution figures reported by Borchart Industrial.

The Funds' asserted need for additional Borchart Steel records presents a genuine issue of material fact, precluding summary judgment. Regardless of whether Borchart Industrial and Borchart Steel are alter egos, there is a genuine issue as to whether the Funds are entitled to audit additional Borchart Steel materials for the limited purpose of verifying the fringe benefit contributions Borchart Industrial reported to the Funds.

**C.     Right to Audit Based on Alter Ego Status; Borchart Steel's Liability**

Plaintiffs claim that Borchart Industrial and Borchart Steel are alter egos and therefore Plaintiffs can audit Borchart Steel's records and hold Borchart Steel liable for unpaid fringe benefit contributions. If Plaintiffs prevail on this claim, then Borchart Steel would effectively be bound by the CBA, and the scope of Plaintiffs' audit would not be limited to verifying Borchart

Industrial's fringe benefit contributions.  Defendants argue that summary judgment is appropriate on these claims because the facts cannot support a finding of alter ego status between Borchart Industrial and Borchart Steel.

For purposes of ERISA, alter ego liability exists when a corporation is "(1) controlled by another to the extent that it has independent existence in form only and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud."  Superior General, 104 F.3d at 1055.  On the one hand, there is evidence in the instant case supporting alter ego liability.  Borchart Industrial and Borchart Steel are both entirely owned by James Borchart, and he serves as the President of both entities.  The companies perform similar work,[1] and Borchart Industrial leases from Borchart Steel the equipment it needs to operate.  Borchart Industrial's employees and fringe benefit contributions are paid through Borchart Steel's bank account.  Additionally, the loan agreement between the two companies has no terms regarding amounts or a repayment schedule.  Further, except for the fact that transactions were formalized in writing, Defendants offer no evidence to support their assertion that Borchart Industrial and Borchart Steel engage in arm's length transactions.  This assertion is undermined by the fact that James Borchart signed documents, such as the loan agreement, for both companies.  Lessard Aff. Exs. B-C.

On the other hand, the record also contains evidence negating alter ego liability.  Borchart Industrial and Borchart Steel operate from different locations, file separate income tax

---

[1] Defendants assert Borchart Industrial and Borchart Steel are in "different parts in the salvage business."  Second Borchart Aff. ¶ 10.  However, the only difference cited by Defendants is that Borchart Industrial engages in work that requires union labor, and Borchart Steel does not.  Id. ¶¶ 10-12.

returns, generally keep separate records, and have different employees. Although covered by the same insurance policy, the companies are listed separately and pay their share of the premium. The companies have formalized their transactions with each other in writing, and Defendants offer a plausible reason—the sporadic nature of Borchart Industrial's cash flow—for why the loan agreement does not contain specific terms. The companies account for the amounts owed between Borchart Steel and Borchart Industrial, and the accounts show the companies repay each other.

Viewed in the light most favorable to Plaintiffs, however, this record can support a finding that Borchart Industrial and Borchart Steel are alter egos. The cases cited by Defendants are unavailing. Defendants first cite Superior General, where the Eighth Circuit affirmed the district court's determination, after a bench trial, that two companies were not alter egos. 104 F.3d at 1054-55. The district court in Superior General relied on findings that control and management of the two companies were separate and distinct, that the companies had separate books, operations, and employees, and that business transactions between the two companies were conducted at arm's length through a competitive bidding process. Id. at 1054. The instant case is distinguishable, since control and management of the Borchart Entities is in the hands of James Borchart, the sole shareholder and President of both companies. Additionally, no evidence suggests that transactions between the Borchart Entities go through a competitive bidding process. Perhaps most importantly, Superior General was decided after a bench trial and a weighing of the evidence, not in the summary judgment context of whether a fact issue has been raised.

Defendants also cite Trustees of the Resilient Floor Decorators Insurance Fund v. A & M

9

Installations, Inc., 395 F.3d 244, 248-49 (6th Cir. 2005), where summary judgment was affirmed against plaintiffs' alter ego claim. Resilient Floor can be distinguished from the instant case, however, because the Resilient Floor plaintiffs' evidence of alter ego liability was scant, consisting primarily of a single $5,000 loan between the alleged alter ego companies. See id. at 249. Additionally, although the alleged alter egos shared office space and office equipment, they did not have identical ownership and management. See id. at 246. In the instant case, Borchart Steel has made loans to Borchart Industrial on a number of occasions, and James Borchart owns and manages both companies. Defendants have cited no authority compelling the conclusion that the Funds' alter ego argument must fail as a matter of law. Defendants' Motion for Summary Judgment is denied as to the Funds' claims against Borchart Steel based on alter ego status.

**D.      James Borchart's Liability**

Defendants also move for summary judgment regarding the potential liability of James Borchart for any unpaid fringe benefit contributions. Defendants argue that the facts can not support piercing the corporate veil of Borchart Industrial or Borchart Steel, and therefore the Funds' claims against James Borchart individually must be dismissed. See Rockney v. Blohorn, 877 F.2d 637, 643 (8th Cir. 1989).

At this time, it is unnecessary to address Defendants' arguments regarding the liability of James Borchart. The Funds validly assert that only after an additional audit will they have evidence regarding the extent, if any, of liability for unpaid fringe benefit contributions. Mem. of Law in Opp. to Mot. for Summ. J. [Docket No. 25] at 10. With evidence procured in the audit the liability of the separate Defendants can better be evaluated. Therefore, Defendants' Motion

for Summary Judgment regarding James Borchart's personal liability is denied pending resolution of Plaintiffs' right-to-audit claims.

### E. Plaintiffs' Claims for Additional Damages and Remedies

Defendants have moved for summary judgment regarding Plaintiffs' claims for additional damages and remedies, such as liquidated damages, interest on unpaid contributions, and attorneys' fees. The Court finds that resolution of Defendants' Motion regarding these claims is premature. Resolution of Plaintiffs' right-to-audit and liability claims is necessary before the Court can address whether Defendants are entitled to summary judgment on Plaintiffs' claims for additional damages and remedies. Therefore summary judgment is denied as to these claims pending resolution of Plaintiffs' right-to-audit claims.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 15] is **DENIED**; Defendants may renew their Motion as to James Borchart's individual liability, and Plaintiffs' claims for additional damages and remedies, after resolution of Plaintiffs' right-to-audit claims.

BY THE COURT:

      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 25, 2006.